Yes, good morning. Faye Arf on behalf of Mr. Akhtar. May it please the court. I raised about six issues and I wasn't really sure which ones the court wanted to hear, so I thought I'd raise the ones that I thought were, that I was always concerned about. The first thing is the presence of a support person during the accuser's testimony. And it always strikes me as rather strange and unfair that when the accusers come into the court, they're accompanied by a special person who sits up there with them. And although it doesn't directly affect the questioning of the witness, just the presence of that person. Do you have any authority for that? That seems to me a very far-out argument, counsel. Well, it's equivalent to what I see it as, the jail clothes, seeing the defendant in jail clothes. Although you don't get to question them, it makes an impression on the jury which you really can't question them about. Well, I don't know how your analogy helps you, because this may speak to having sympathy for the victim, but it doesn't necessarily mean that this defendant, I mean, the jail clothes problem is that this defendant is identified as being dangerous. The fact that somebody who's suffered a traumatic event at the hands of somebody, maybe or maybe not the defendant, might need support doesn't single out the defendant as being the guilty party. Well, in that case, in this case, we do have a victim who did suffer an attack. But it also, it does... And is there any doubt about her having suffered an attack? Not in this case, no. So what is the jury supposed to infer that's incorrect? Well, it places an undue emphasis on, it seems to affect the credibility that some witnesses get some special treatment more than others. Well, I hope you have some better arguments, counsel. Okay. Move on. We'll move on. All right. Secondly, the question about the appointing one instead of two psychiatrists or psychologists. I think that, well, this case seems rather bizarre, just the way the whole thing occurred, my client's actions and Mr. Akhtar's actions in going to the police afterwards. The whole thing, and then he did, the defense presented evidence of his head trauma, so he did have some, he was mentally challenged in some way. And the way the California statute reads is, if you're not seeking a finding of mental incompetence, so there's like a double negative in there. So does that mean when you're seeking a competence, a finding of competence, that you should have two? Or does it count? Well, I think the notion is that if you're seeking to be found incompetent, you will be presenting your own evidence to that effect. The court appointed one. In this case, the one the court appointed did not find the defendant incompetent. Defendant chose not to pursue the argument, but wasn't in the position that sometimes defense counsel are of having a defendant saying, you don't call me crazy, I'm not crazy, I'm not crazy, whereby demonstrating that he's crazy. I think that's the situation the State statute is designed to take care of. If the defendant says, I won't go there, and the defense counsel has reason to think you should go there, that can be indicated to the court, and the court may in those circumstances appoint a second shrink. That wasn't triggered here, so I'm not sure what the ineffective assistance of counsel is supposed to be. Well, it seems that initially, the whole thing that triggered the request for a psychiatrist was the fact that counsel initially had an evaluation, and that apparently found him to be not competent. In this case, he seemed to be mentally challenged, so the statute seems to be confusing at the least. I don't believe whether Aki was complied with here. Aki? Yes. Aki, if the Court could just give me a little clue. It's a very important Supreme Court case. Oh, okay, Aki. I'm sorry. So you do have it in mind. Yes. The difficulty that I see is that in this case, the defendant never said anything throughout trial, so we really don't know if he was competent or incompetent. He did have a leg brace on, we know that. He didn't say a word throughout, so it's hard to really know. It's hard to really know. Well, did his counsel say to the Court, we need an appointed psychiatrist who is here to represent the defendant? No, he didn't. No, he didn't. Do you think that counsel really thought this guy was incompetent? The record's really weird about that. Yeah, it seems that he was mentally challenged. I think that there's a theme throughout the entire case, that there's something not right, just by his actions that day. And the fact that they did have to appoint at least some psychiatrist, I don't know, a psychiatrist to evaluate him. That was because counsel for the defense suggested that he had doubts as to Actar's incompetence to stand trial. Yes. Not at the time of the trial. Right, okay, yes. And so the judge appointed a psychiatrist in conformity with 1369. Right. We're suggesting... Where is the violation of a Supreme Court rule or case as far as due process in following that? Well, there is the right to, well, I cited in my brief a number of Supreme Court cases about the right to be competent at trial. Yeah, but there's no evidence of incompetence. The one psychiatrist appointed by the court didn't reach that conclusion, and defense didn't do anything further to pursue the issue. So maybe I should move on to my other issues. In terms of the self-defense instruction, it's hard for me to understand exactly what the defense was. We know that he was mentally challenged, the defendant. He had suffered a brain injury, he'd been in a coma, he'd been into the hospital. And it seems that under those circumstances, it would have been important to have unreasonable self-defense come in at some point for the jury to understand. But he didn't testify. What evidence was there that could have supported a judgment or a determination by the jury that he acted in self-defense or in imperfect self-defense? Well, that would have been the fact that, well, they did present, the defense did present evidence of his head injuries, head trauma, which would have... I don't see the connection between head trauma and self-defense. Well, what we're trying to do is show that there should have been a connection between... Otherwise, what was the whole defense theory in this case, that he suffered a head trauma, that he got angry quickly? All of that would have been in with unreasonable self-defense, unreasonable in that he believed he was... The fact that somebody comes out hurt doesn't mean that somebody's hurt because the other person started it. There has to be some kind of evidence to support a self-defense theory. And I simply don't find any evidence to support a self-defense theory, so I can't fault the trial judge for not giving an instruction to that effect. Except that he did go to the police and say that she pulled a gun on him. Fine, but he didn't testify, so that evidence really isn't before the jury now, is it? But it did come before the jury when he went to the police. But he gave multiple stories. Not much of a self-defense. The fact that I told the police several different stories and one of them happened to suggest self-defense really doesn't make much of a self-defense argument. Except that, well, I'm losing time. I wanted to save a little before I get into the other argument about the genital injuries. There's no evidence that he did anything below the belt, as the prosecutor would call it. No evidence of anything. I mean, he jumped on her, he stabbed her, he hit her with a pellet gun, but there's no evidence that it went below the belt. And the torture count was very important. One of your complaints is they admitted evidence of genital injuries. Isn't that below the belt? Yes, except there's no showing that he was responsible for them and that it had anything to do with the attack. In other words, the children that saw this, they didn't say anything about it. Can't we infer that when he called up the police and told them that they were going to find a dead body,  Oh, yes, yes, the head, the neck, the esophagus, everything else. Except for the genital injuries, which was used for the torture, which carried a life count. So I'd like to save 20 seconds, if I could, for rebuttal. Thank you. Good morning. My name is Peter Smith. I'm a Deputy Attorney General for the State of California. I represent the respondent in this matter. I think can you move that even higher? I hope so, Your Honor. I have a soft voice. Just quickly on the genital injuries, I disagree with counsel. The nurse practitioner testified that those injuries were no older than 24 hours, and, in fact, the laceration inside the vagina was still bleeding at the time, and the nurse practitioner testified that it was caused by a sharp object, Are you qualified to testify as such, nurse practitioner? Was that issue ever raised? That wasn't an issue raised, Your Honor. If I can go to the first issue, which is appointment of one psychologist, the defense counsel came in and, based on a report conducted by Dr. Thompson, who later testified at trial, he raised a doubt as to the defendant's competency. I think he came into court, counsel came into court and said, Your Honor, I have a doubt as to the competency of Mr. Akhtar. Doubt meaning I'm not sure, I believe it's reasonable to infer he's not sure whether he's competent or incompetent. Excuse me. Counsel is with the defendant, is experiencing time with the defendant, so he also knows and is best in a position to understand possibly whether his client is incompetent. By coming in and saying, I'm unsure, I doubt it, I have a doubt as to competency, I think is saying, hey, I'd like to investigate this issue, which the court goes ahead and appoints one psychologist to address that issue. In addition, counsel cannot show prejudice in this instance. Counsel cannot show whether a second expert would have benefited Mr. Akhtar in this situation. Counsel cannot show whether a second opinion would have found Mr. Akhtar incompetent. In fact, the evidence Dr. Thompson testified during trial, he said basically in essence Mr. Akhtar knew right from wrong. And then Dr. Woodman testified also for the defense, and Dr. Woodman testified that Mr. Akhtar was firmly grounded in reality. So contrary to what counsel argued a minute ago, it would appear that the defense medical experts would believe that he was competent. So where's the prejudice in this instance? And finally, there's no Supreme Court precedent on this issue, so there's no contrary or unreasonable application issue, And the State court decision in this regard is entitled to high degree of deference under AEDPA. Was Aki complied with? Your Honor, I apologize. I don't know. I'm not familiar with Aki. I suggest that you might educate yourself with that case when you go back to your office. Thank you. I will. I apologize for that. Mr. Smith, may I ask you something? We've heard some questioning about whether there was any evidence of self-defense upon which an instruction could have been requested and should have been given. As I understand the facts, the prosecution introduced a statement by Akhtar in which statement he stated that his wife pulled a gun on him. Yes. Why isn't that sufficient evidence upon which to instruct for self-defense? There's actually two statements that were provided by the prosecution. One was Officer Ritter, which was immediately about a day after the incident, the defendant said, Mr. Akhtar told Officer Ritter, I killed my wife. I went over to my wife's residence. She was acting strangely, I believe was the testimony. She pulled a gun. We tussled for it. Then I pulled out. I grabbed a knife and stabbed her. The second statement was made to Dr. Thompson, and it was a little different. The statement was basically I went over to my wife's residence. We had an argument. I thought there was a strange man in the house named George, and I pulled the knife and stabbed her. They were inconsistent statements. Very inconsistent. But if the jury were to credit the first statement and not the second statement, then the jury would have before it evidence of self-defense. Yes. But you also have to, as a defense attorney, I think you have to look at a case and what's reasonable with respect to tactical decisions. In this case, not only do you have inconsistent statements, Your Honor, and they're pretrial statements, and as you mentioned before, the defendant didn't testify. The defendant put no evidence on regarding self-defense. Then you have two pretrial, inconsistent, short, lacking detail statements. So what you're saying is if we were seeing this on direct appeal, that would be one thing, but the strategic determination of counsel not to pursue a self-defense instruction and argument is within the discretion under the first step in Strickland. I think it is. I think it's a reasonable, tactical, thoughtful decision. And, Your Honor, if I can add one more thing to that, you also have to consider the overwhelming evidence that he was the aggressor in this case. You have the testimony of the children. You have the testimony of the wife, in which is completely supported by the physical evidence in this case. There is no support for his pretrial statements with the physical evidence in this matter. Strategically, the counsel could say it's going to prejudice if we go that way. I think it would be laughable if he presented that argument, Your Honor. What was the theory of defense? The theory was he had a brain damaged. He was brain damaged pursuant to a motorcycle accident in 1985, and thus he was incapable of the premeditation and deliberation that is required with first degree attempted first degree murder. He was more inclined because of the brain damage, because the brain damage caused him to act out in anger. He was unable to control his anger. It was more, excuse me, would you like to ask a question? I have a question. Was it incapacity to form intent defense? Well, I think they were going in that direction. I think the bottom line was. That was no longer the law in California. Pardon? You couldn't claim. No, I think it was. In California. I think it was more of a, he was unable to, he didn't form the premeditation. He didn't form premeditation. Right. Not that he was incapacity. I'm sorry. He didn't form the premeditation and deliberation because he had this brain damage that he was unable to control his anger, and when he was fixed on some particular issue that made him mad, he was unable to control that emotion. And thus attempted voluntary manslaughter upon the sudden quarrel or heat of passion was more in tune or in line with the facts of the case. And if you have no other further questions, I'd submit it on my brief. Thank you very much. Thank you. A few seconds left for rebuttal. Yes. Just a few seconds. In terms of the right to counsel, I just want to say you talked about an evidentiary hearing. Put the mic down. Oh, I'm sorry. Trial counsel said there was no evidence in the record about whether Mr. Akhtar was competent or incompetent, but that's why we want an evidentiary hearing, because that way we could formulate facts and see exactly what was going on. In terms of... I'm afraid your time has expired. Oh. Sorry. Okay. We do have a busy calendar. The case just argued is submitted.
judges: Fletcher B. , Clifton, Bea